# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

**JONATHAN PRITT and**
**RICHARD D. SPENCER,**
**individually and on behalf of others**
**similarly situated,**

      **Plaintiff,**

  v.                       **Civil Action No. _____**

**MEC CONSTRUCTION LLC,**

      **Defendant.**

## COMPLAINT

NOW COME Plaintiffs Jonathan Pritt and Richard D. Spencer, by and through their undersigned counsel, and file this Complaint against Defendant MEC Construction, LLC making claims to recover unpaid wages and overtime wages under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., individually and on behalf of others similarly situated as provided in 29 U.S.C § 216(b), stating as follows:

## PARTIES

1. Plaintiff Jonathan Pritt ("Plaintiff Pritt") is an individual residing in Normantown, Gilmer County, West Virginia.

2. Plaintiff Richard D. Spencer ("Plaintiff Spencer") is an individual residing in Mabie, Randolph County, West Virginia.

3. Defendant MEC Construction, LLC ("Defendant MEC") is a for-profit limited liability company, organized pursuant to the laws of the State of Pennsylvania, and authorized to do business in the States of Pennsylvania and West Virginia.

4. Defendant MEC has a corporate headquarters and principal office located at 130 Meadow Ridge Road, Mount Morris, Pennsylvania 15349.

5. Defendant MEC has a Fabrication Facility located at 5338 Shinnston Pike, Meadowbrook, West Virginia 26404.

6. Defendant MEC is a service company which provides construction and maintenance services for the oil, gas, power, and ethanol industries in the mid-Atlantic and Northeastern United States.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff Pritt's and Plaintiff Spencer's claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States.

8. At all relevant times, Plaintiff Pritt, Plaintiff Spencer, and similarly situated employees, were employees of Defendant MEC at Defendant's Fabrication Facility located at 5338 Shinnston Pike, Meadowbrook, West Virginia 26404 and/or employees of Defendant MEC working at the job sites of Defendant MEC's customers in Pennsylvania, West Virginia, and Ohio.

9. At all relevant times the wages of Plaintiff Pritt, Plaintiff Spencer, and similarly situated employees, were paid from Defendant MEC's corporate headquarters and principal office located at 130 Meadow Ridge Road, Mount Morris, Pennsylvania 15349, and the

determinations and policies regarding the payment of wages and other compensation were developed in Mount Morris, Pennsylvania.

10. Venue is appropriate in the U.S. District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because Defendant MEC resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff Pritt's and Plaintiff Spencer's claims occurred in this judicial district.

## FACTS

### (Plaintiff Pritt)

11. Plaintiff Pritt was hired by Defendant MEC in 2011 and initially worked as a Pipe Fitter's Helper.

12. After approximately one month, Plaintiff Pritt became a Pipe Fitter.

13. In or about 2012, Plaintiff Pritt began performing hydrostatic testing and bolt up services, and was made the supervisor of quality control.

14. Plaintiff Pritt's employment was terminated by Defendant MEC on or about January 20, 2017.

15. During Plaintiff Pritt's entire period of employment by Defendant MEC, Plaintiff Pritt worked in the shop at Defendant MEC's Fabrication Facility.

16. On rare occasions, i.e. no more than 10 times in any calendar year, Plaintiff Pritt performed work duties at the sites of Defendant MEC's customers instead of working at Defendant MEC's Fabrication Facility.

17. Plaintiff Pritt's hourly wage on January 1, 2013 was $20.00.

18. On or about July 20, 2014, Plaintiff Pritt's hourly wage increased to $21.00.

19. On or about September 27, 2015, Plaintiff Pritt's hourly wage increased to $25.00, and Plaintiff Pritt's hourly wage remained $25.00 until Plaintiff Pritt's termination.

20. From on or about May 1, 2014 through on or about September 30, 2016, Plaintiff Pritt was paid "per diem" of $100.00 per day.

21. The total "per diem" paid to Plaintiff Pritt during 2015 totaled $18,530.00.

22. From on or about October 1, 2016 until December 31, 2016, Plaintiff was occasionally paid "per diem" of $40.00 per day.

23. The total "per diem" paid to Plaintiff Pritt during 2016 totaled $800.00.

24. The "per diem" was a predetermined amount of money paid to Plaintiff Pritt and was not for the purpose of reimbursing Plaintiff Pritt for expenses incurred on Defendant MEC's behalf or for expenses incurred by reasons of action taken for the convenience of Defendant MEC.

25. The "per diem" was actually compensation by Defendant MEC to Plaintiff Pritt for services rendered by Plaintiff Pritt during hours worked by Plaintiff Pritt for Defendant MEC.

26. Defendant MEC did not include the "per diem" payments in the calculation of Plaintiff Pritt's "regular rate."

27. During his employment by Defendant MEC, Plaintiff Pritt worked overtime during practically every workweek.

28. During 2015, Plaintiff Pritt was paid over $26,000.00 in overtime wages.

29. During 2016, Plaintiff Pritt was paid over $30,000.00 in overtime wages.

30. Because Defendant MEC did not account for the "per diem" in calculating Plaintiff Pritt's "regular rate", the actual "regular rates" and "overtime rates" to which Plaintiff

Pritt was entitled during his employment exceeded the "regular rates" and "overtime rates" he was paid.

31.     Throughout Plaintiff Pritt's employment, Defendant MEC also paid Plaintiff Pritt "safety bonuses" every three to four months.

32.     During 2015, the "safety bonuses" paid by Defendant MEC to Plaintiff Pritt totaled approximately $2,000.00.

33.     During 2016, the "safety bonuses" paid by Defendant MEC to Plaintiff Pritt totaled approximately $1,600.00.

34.     Defendant MEC did not include the "safety bonus" payments in the calculation of Plaintiff Pritt's "regular rate", and consequently, they were not included in the calculation of Plaintiff Pritt's "overtime rate."

35.     Because Defendant MEC did not account for the "safety bonuses" in calculating Plaintiff Pritt's "regular rate", the actual "regular rates" and "overtime rates" to which Plaintiff Pritt was entitled during his employment exceeded the "regular rates" and "overtime rates" he was paid.

### (Plaintiff Spencer)

36.     Plaintiff Pritt was hired by Defendant MEC in 2012 and worked as a painter and sandblaster.

37.     During the relevant time period, the majority of Plaintiff Spencer's work for Defendant MEC was done in the field at the work sites of Defendant MEC's customers.

38.     During the relevant time period, Plaintiff Spencer occasionally worked in the shop at Defendant MEC's Fabrication Facility.

39.     Plaintiff Spencer was laid off by Defendant MEC on or about January 27, 2017.

40. Plaintiff Spencer's employment was terminated by Defendant MEC on or about April 27, 2017.

41. Plaintiff Spencer's hourly wage from 2014 until his employment termination was $15.50.

42. During his employment, since at least January 2014, Plaintiff Spencer was paid "per diem" in an amount ranging from $85.00 to $100.00 per day.

43. Plaintiff Spencer was paid "per diem" whether he was working in the field or at the shop at Defendant MEC's Fabrication Facility.

44. Although Plaintiff Spencer occasionally incurred expenses while working in the field for Defendant MEC, there was no correlation between the amount of "per diem" paid to Plaintiff Spencer and the amount of expenses incurred by Plaintiff Spencer.

45. Indeed, the amount of "per diem" paid to Plaintiff Spencer grossly exceeded the expenses incurred by Plaintiff Spencer, and Plaintiff Spencer was paid "per diem" whether or not he actually incurred expenses.

46. The total "per diem" paid to Plaintiff Spencer during 2014 totaled $15,790.00.

47. The total "per diem" paid to Plaintiff Spencer during 2015 totaled $18,060.00.

48. The total "per diem" paid to Plaintiff Spencer during 2016 totaled $14,484.00.

49. The "per diem" was a predetermined amount of money paid to Plaintiff Spencer and was not for the purpose of reimbursing Plaintiff Spencer for expenses incurred on Defendant MEC's behalf or for expenses incurred by reasons of action taken for the convenience of Defendant MEC.

50. The "per diem" was actually compensation by Defendant MEC to Plaintiff Spencer for services rendered by Plaintiff Spencer during hours worked by Plaintiff Spencer for Defendant MEC.

51. Defendant MEC did not include the "per diem" payments in the calculation of Plaintiff Spencer's "regular rate."

52. During his employment by Defendant MEC, Plaintiff Spencer worked overtime during practically every workweek.

53. During 2014, Plaintiff Spencer was paid $8,486.33.00 in overtime wages.

54. During 2015, Plaintiff Spencer was paid $6,614.69 in overtime wages.

55. During 2016, Plaintiff Spencer was paid $5,173.15 in overtime wages.

56. Because Defendant MEC did not account for the "per diem" in calculating Plaintiff Spencer's "regular rate", the actual "regular rates" and "overtime rates" to which Plaintiff Spencer was entitled during his employment exceeded the "regular rates" and "overtime rates" he was paid.

57. Throughout Plaintiff Spencer's employment, Defendant MEC also paid Plaintiff Spencer "safety bonuses" every three to four months.

58. During 2014, the "safety bonuses" paid by Defendant MEC to Plaintiff Spencer totaled $1,654.09.

59. During 2015, the "safety bonuses" paid by Defendant MEC to Plaintiff Spencer totaled $1,199.88.

60. During 2016, the "safety bonuses" paid by Defendant MEC to Plaintiff Spencer totaled $782.51.

61. Defendant MEC did not include the "safety bonus" payments in the calculation of Plaintiff Spencer's "regular rate", and consequently, they were not included in the calculation of Plaintiff Spencer's "overtime rate."

62. Because Defendant MEC did not account for the "safety bonuses" in calculating Plaintiff Spencer's "regular rate", the actual "regular rates" and "overtime rates" to which Plaintiff Spencer was entitled during his employment exceeded the "regular rates" and "overtime rates" he was paid.

### (Similarly Situated Employees)

63. From on or about May 1, 2014, until the present, Defendant MEC has employed approximately 40 employees in its Fabrication Facility in Meadowbrook, West Virginia who have worked primarily in the shop at the Fabrication Facility.

64. The employees working primarily in the shop at the Fabrication Facility were in various job classifications, including Pipe Fitters, MIG welders, painters, and material handlers.

65. These employees rarely, if ever, worked outside of the Fabrication Facility at the sites of Defendant MEC's customers, and consequently, rarely, if ever, incurred expenses such as lodging or meals in the course of their employment by Defendant MEC.

66. Despite rarely, if ever, incurring expenses, these employees, similarly to Plaintiff Pritt, were paid "per diem" as a matter of course.

67. From on or about May 1, 2014, until the present, Defendant MEC has employed approximately 40 employees in the field working at MEC client's work sites.

68. The employees working primarily in the filed were in various job classifications, including Pipe Fitters, MIG welders, welder's helpers, and painters.

69. Despite incurring no to nominal expenses, these employees, similarly to Plaintiff Spencer, were paid "per diem" as a matter of course with no consideration of the expenses they actually incurred and no correlation between the amount of expenses incurred and the amount if "per diem" paid.

70. Similar to Plaintiff Pritt and Plaintiff Spencer, Defendant MEC did not include the "per diem" in the calculation of these employees' "regular rate."

71. Similar to Defendant Pritt and Plaintiff Spencer, because Defendant MEC did not account for the "per diem" in calculating these employees' "regular rate", the actual "regular rates" and "overtime rates" to which these employees were entitled during their employment exceeded the "regular rates" and "overtime rates" they were paid.

72. Throughout the employment of these employees, Defendant MEC also paid these employees "safety bonuses" every three to four months.

73. Similar to Plaintiff Pritt and Plaintiff Spencer, Defendant MEC did not include the "safety bonus" payments in the calculation of these employees' "regular rate", and consequently, they were not included in the calculation of these employees' "overtime rates."

74. Because Defendant MEC did not account for the "safety bonuses" in calculating these employees' "regular rates", the actual "regular rates" and "overtime rates" to which these employees were entitled during their employment exceeded the "regular rates" and "overtime rates" they were paid.

## COUNT ONE: CLAIM FOR UNPAID OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT

75. Plaintiffs incorporate by reference Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. Defendant MEC is an "employer" as defined in the Fair Labor Standards Act of 1938 ("FLSA") at 28 U.S.C. § 203.

77. Defendant MEC is an "enterprise engaged in commerce" as defined in the FLSA at 28 U.S.C. § 203.

78. Defendant MEC was required to pay Plaintiff Pritt, Plaintiff Spencer, and all similarly situated employees, overtime wages at a rate of one and one-half times Plaintiff Pritt's, Plaintiff Spencer's, and the similarly situated employees' regular rates for all hours worked in excess of 40 hours in a work week pursuant to the FLSA, 28 U.S.C. § 207.

79. The FLSA provides that the "regular rate" must include "all remuneration for employment paid to, or on behalf of, the employee" except specifically excluded payments. The "per diem" and "safety bonuses" were not payments which may be excluded from calculation of the "regular rate" of Plaintiff Pritt, Plaintiff Spencer, and the similarly situated employees.

80. The "per diem" and "safety bonuses" were remuneration to Plaintiff Pritt, Plaintiff Spencer, and all similarly situated employees which should have been included in the calculation of the employees' "regular rates" and consequently, the calculation of the employees' "overtime rates."

81. Defendant MEC failed to include the "per diem" and "safety bonuses" in the calculation of the "regular rates" and "overtime rates" of Plaintiff Pritt, Plaintiff Spencer, and all similarly situated employees.

82. Because Defendant MEC failed to include the "per diem" and "safety bonuses" in the calculation of the "regular rates" and "overtime rates", Defendant MEC failed to pay Plaintiff Pritt, Plaintiff Spencer, and all similarly situated employees all wages and overtime wages due

and owing to Plaintiff Pritt, Plaintiff Spencer, and the similarly situated employees in violation of the FLSA, 28 U.S.C. § 207.

83. Defendant MEC's violation of the FLSA by failing to pay all wages and overtime wages to which Plaintiff Pritt, Plaintiff Spencer, and all similarly situated employees were entitled was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pritt and Plaintiff Spencer, individually and on behalf of similarly situated employees, pray for the following relief:

(a) That this Court certify this action as an FLSA collective action and certify a class of employees similarly situated to Plaintiff Pritt and Plaintiff Spencer;

(b) That Plaintiff Pritt and Plaintiff Spencer be designated as the collective class representatives;

(c) That Plaintiff Pritt and Plaintiff Spencer and the certified class may have a trial by jury;

(d) That Plaintiff Pritt and Plaintiff Spencer and the certified class be awarded all damages provided by law, including but not limited to, unpaid wages and unpaid overtime wages;

(e) That Plaintiff Pritt and Plaintiff Spencer and the certified class be awarded liquidated damages as provided by the FLSA;

(f) That Plaintiff Pritt and Plaintiff Spencer and the certified class be awarded pre-judgment interest, attorneys' fees and costs; and

(g) That Plaintiff Pritt and Plaintiff Spencer and the certified class be awarded such other relief as this Court may deem as just and equitable.

**JONATHAN PRITT and**
**RICHARD D. SPENCER**

By Counsel

         s/ *Mark Goldner*
Mark Goldner, Esq. (PA State Bar No. 75938)
Maria W. Hughes, Esq.  (PA State Bar No. 310254)
HUGHES & GOLDNER, PLLC
10 Hale Street, Fifth Floor
Charleston, WV 25301
TEL: (304) 400-4816
FAX: (304) 205-7729
mark@wvemploymentrights.com
maria@wvemploymentrights.com